**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2859
_____

UNITED STATES OF AMERICA

v.

ONE (1) PALMETTO STATE ARMORY PA-15
MACHINEGUN RECEIVER/FRAME, UNKNOWN
CALIBER SERIAL NUMBER: LW001804;
WATSON FAMILY GUN TRUST, Claimant

(D.C. No. 15-cv-02202)


RYAN S. WATSON, Individually and as Trustee of the
Watson Family Gun Trust

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA;
DIRECTOR BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES

(D.C. No. 14-cv-06569)

Ryan S. Watson, Individually and as
Trustee of the Watson
Family Gun Trust,

                              Appellant
                _____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 2-15-cv-02202 and 2-14-cv-06569)
District Judge: Honorable Stewart Dalzell
                _____

Argued April 4, 2016

Before: AMBRO and KRAUSE, *Circuit Judges*,
and THOMPSON,* *District Judge*

(Opinion filed: May 18, 2016)

Alan A. Beck, Esq.
2692 Harcourt Drive
San Diego, CA 92123

David R. Scott, Esq.
Law Offices of J. Scott Watson
24 Regency Plaza
Glen Mills, PA 19342

_____

* The Honorable Anne E. Thompson, District Judge for the
United States Court for District of New Jersey, sitting by
designation.

Stephen D. Stamboulieh, Esq. [Argued]
P.O. Box 4008
Madison, MS 39130

Counsel for Appellant

Patrick Nemeroff, Esq. [Argued]
United States Department of Justice
Civil Division
Room 7217
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Michael S. Raab, Esq.
United States Department of Justice
Civil Division
Room 7237
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Jacqueline C. Romero, Esq.
J. Alvin Stout, III, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

Robert J. Olson, Esq.
William J. Olson
370 Maple Avenue West
Suite 4
Vienna, VA  22180

Counsel for Amicus-Appellants


Joran Eth, Esq.
James R. McGuire, Esq.
Morrison & Foerster
425 Market Street
Spear Street Tower
San Francisco, CA  94105

Adam M. Regoli, Esq.
Morrison & Foerster
370 17th Street
Suite 4200
Denver, CO  80202

Counsel for Amicus-Appellee
_____

OPINION OF THE COURT
_____

THOMPSON, *District Judge*

Appellant Ryan S. Watson ("Watson"), individually and on behalf of the Watson Family Gun Trust, filed this action claiming that the de facto ban on the possession of a

machine gun[1] found in 18 U.S.C. § 922(o) is unconstitutional facially and as-applied to him under the Second Amendment to the U.S. Constitution.  Alternatively, Watson argues that § 922(o) does not apply to the Watson Family Gun Trust because it only applies to "persons" and a trust is not a "person" under the statute's definition.  The District Court granted the government's motion to dismiss, explaining that under the Supreme Court's opinion in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and this Court's opinion in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), the Second Amendment does not protect the possession of machine guns.  Moreover, the Court found that a trust is not exempt from § 922(o) because a trust is not an entity distinct from its trustees, and therefore it cannot own property.  Because we agree that the Second Amendment does not protect the possession of machine guns, and because trustees, and by extension trusts, are not exempt from § 922(o), we affirm.

## I.    BACKGROUND

The National Firearms Act provides that prior to manufacturing a firearm, any prospective maker must apply for permission from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  26 U.S.C. §§ 5822, 5841.  ATF will deny the application if making or possessing the firearm would place the person applying in violation of any law.  *See* 26 U.S.C. § 5822; 27 C.F.R. § 479.65.  Although a machine gun qualifies as a firearm under the National Firearms Act, 26 U.S.C. § 5845(a), a separate federal law, the

---

[1] Federal statutes and caselaw alternate between the spellings "machinegun" and "machine gun."  We will use "machine gun" except when quoting materials that spell the term otherwise.

Gun Control Act, prohibits the private manufacture of machine guns in most instances by making it unlawful for any person "to transfer or possess a machine gun," with narrow exceptions for certain government entities and machine guns lawfully possessed before 1986.  18 U.S.C. § 922(o).  The Gun Control Act defines a "person" as an "individual, corporation, company, association, firm, partnership, society, or joint stock company."  18 U.S.C. § 921(a)(1).

Watson is the sole trustee of the Watson Family Gun Trust ("the Trust").  On May 23, 2014 and June 24, 2014, Watson submitted applications on behalf of the Trust for permission to make and register an M-16-style machine gun. On August 5, 2014, an ATF examiner mistakenly approved one of Watson's applications.  Shortly thereafter, Watson had a machine gun manufactured pursuant to that approval. However, on or about September 10, 2014, ATF informed Watson that the approval had been a mistake and that his application had been "disapproved."  ATF explained in a letter that Watson's application was denied because he was prohibited by law from possessing a machine gun.  Watson claimed to be exempt from the prohibition on possessing machine guns because he had applied on behalf of a trust, which he argued was not a "person" covered by the Gun Control Act.  ATF explained that although a trust is not a "person" under the Act, a trust cannot legally make or hold property.  Therefore, ATF considers the individual acting on behalf of the trust to be the proposed maker and possessor of the machine gun.

Watson received a telephone call from an ATF agent on October 10, 2014 inquiring whether a machine gun had been made pursuant to the initial application approval.  The ATF agent indicated that if any machine gun had been made, the gun must be surrendered to ATF.  On November 14, 2014, Watson met with an ATF agent and surrendered his

machine gun under protest. That same day, he filed suit against the U.S. Attorney General and the ATF Director (collectively, "the government"), seeking declarative and injunctive relief from 18 U.S.C. § 922(o), 26 U.S.C. § 5801 *et seq.*, and the implementing regulations found in 27 C.F.R. § 479.1 *et seq.* Watson alleged that these statutory and regulatory provisions act as a de facto ban on an entire class of arms in violation of the Commerce Clause and the Second, Ninth, and Tenth Amendments to the Constitution. Additionally, Watson alleged violations of his due process rights under the Fifth Amendment and his equal protection rights under the Fourteenth Amendment, as well as a claim for detrimental reliance based on the ATF's initial approval of his application. The government separately initiated a forfeiture action for Watson's machine gun, which was later consolidated with his challenge.

On January 16, 2015, the government moved to dismiss Watson's action for lack of standing and failure to state a claim. On July 22, 2015, the District Court ruled that Watson did have standing, but that he failed to state a claim upon which relief can be granted.[2] Among other holdings, the Court held that Watson failed to state a claim under the Second Amendment because the Second Amendment does not protect the possession of machine guns. He appeals that decision as well as the District Court's finding that a trust is incapable of owning a machine gun under § 922(o). Because these are the only issues briefed by Watson on appeal, we will not discuss the District Court's other holdings. *See Laborers'*

---

[2] On appeal, the government continued to argue that Watson lacked standing, but based on Watson's position at oral argument that he is challenging the Gun Control Act and not the National Firearms Act, the government essentially conceded this point.

*Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (issues not briefed on appeal are waived).  However, we note that all of Watson's claims against the government were dismissed.

The government's consolidated forfeiture claims are still pending, which led us to question whether the decision being appealed was a final order, and thus whether we had jurisdiction.  But on August 13, 2015, the District Court issued a certification of entry of final judgment.  This cured any jurisdictional defect in the case.  *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 156 (3d Cir. 2014).

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1346.  We have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Foglia v. Renal Ventures Mgmt., LLC,* 754 F.3d 153, 154 n.1 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007).  We "are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."  *Foglia*, 754 F.3d at 154 n.1 (citations omitted).

## III.    DISCUSSION

As a matter of constitutional avoidance, we will first turn to Watson's argument that § 922(o) of the Gun Control Act does not apply to a trust.  *See Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this

Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."). Watson argues that § 922(o) of the Gun Control Act does not apply to a trust because § 922(o) applies only to "persons" and a trust is not a "person" under the terms of the statute.

With certain narrow exceptions, the provision states that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o). The Gun Control Act defines a person as "any individual, company, association, firm, partnership, society, or joint stock company." 18 U.S.C. § 922(a)(1). As Watson notes, a "trust" is not one of the listed entities. However, this does not mean that a trust is therefore entitled to possess a machine gun.

As the District Court stated, a trust is not an entity distinct from its trustees, nor is it capable of legal action on its own behalf. 76 Am. Jur. 2d Trusts § 3 (citing Restatement (Third) of Trusts § 2 (2003)). Indeed, Watson himself does not dispute that he is the "individual human being" seeking to possess a gun on behalf of the Trust. He argues, however, that because trusts are not "persons" under the statute, he may act on behalf of the Trust in his capacity as a trustee without triggering the prohibition on natural persons transferring or possessing a machine gun. Appellant's Br. 55-56. But nothing in the Gun Control Act supports such a reading. Irrespective of whether Watson is a trustee, he is also a natural person and therefore prohibited from performing any of the acts forbidden of natural persons under the Gun Control Act. His inability to comply with the Gun Control Act, in turn, prevents ATF from granting his application under the National Firearms Act. *See* 26 U.S.C. § 5822; 27 C.F.R. § 479.65.

Moreover, this holding is necessarily correct because to interpret the Gun Control Act as Watson suggests would allow any party—including convicted felons, who are

expressly prohibited from possessing firearms under 18 U.S.C. § 922(g)(1)—to avoid liability under this section simply by placing a machine gun "in trust." Any "individual, company, association, firm, partnership, society, or joint stock company" could lawfully possess a machine gun using this method. 18 U.S.C. § 921(a)(1). Interpreting the statute so as to include this exception would thereby swallow the rule. We refuse to conclude that with one hand Congress intended to enact a statutory rule that would restrict the transfer or possession of certain firearms, but with the other hand it created an exception that would destroy that very rule. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (rejecting an interpretation of a statute that would allow the exception to swallow the rule); *In re New York City Shoes, Inc.*, 880 F.2d 679, 685 n.6 (3d Cir. 1989) (same); *see also Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976) (same).

We turn next to Watson's argument that § 922(o) is unconstitutional facially and as-applied to Watson under the Second Amendment. We agree with the District Court that Watson offers no facts to distinguish why the challenged laws should not apply to him. Therefore, we will treat Watson's claim as a facial challenge. The Second Amendment reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. To determine whether § 922(o) impermissibly burdens the Second Amendment right, we must begin with *District of Columbia v. Heller*, 554 U.S. 570 (2008).

In *Heller*, the Supreme Court struck down several statutes in the District of Columbia prohibiting the possession of handguns and requiring lawfully owned firearms to be kept inoperable. 554 U.S. at 635. Grounding its inquiry in historical analysis, the Court found that the Second Amendment protects an individual's right to possess firearms,

at least for purposes of self-defense in the home. *Id.* at 576, 636. However, the Court warned that "the right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion). The Court recognized that "the Second Amendment right, whatever its nature, extends only to certain types of weapons," *Heller*, 554 U.S. at 623 (citing *United States v. Miller*, 307 U.S. 174 (1939)), and specified that it was referring to those weapons "in common use" and not "those weapons not typically possessed by law-abiding citizens for lawful purposes," *id.* at 625, 627. Turning to the handgun ban at issue in the case, the Court struck down the ban because it "amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for the "lawful purpose" of self-defense in the home, "where the need for defense of self, family, and property is most acute." *Id.* at 628.

Based on *Heller*, we adopted a two-pronged approach to Second Amendment challenges. *Marzzarella*, 614 F.3d at 89. "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* If it does not, the inquiry ends. *Id.* If it does, we move on to the second step: "[W]e evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid." *Id.*

*Heller* and subsequent decisions in our Court make clear that the de facto ban on machine guns found in § 922(o) does not impose a burden on conduct falling within the scope of the Second Amendment. Turning first to *Heller*, we note that that opinion discusses machine guns on several occasions, and each time suggests that these weapons may be banned without burdening Second Amendment rights. *See*

*Heller*, 554 U.S. at 627-28 ("It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause. . . . But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right."); *id.* at 624 (suggesting that it would be a "startling" reading of *Miller* that restrictions on machine guns are unconstitutional).

Next, we turn to our Circuit's caselaw. We examined this question in *Marzzarella*. *Marzzarella* concerned whether Appellant Michael Marzzarella's conviction under 18 U.S.C. § 922(k) for possession of a handgun with an obliterated serial number violated his Second Amendment rights. 614 F.3d at 87. We reiterated that "[a]t its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home," and thus, under *Heller*, "restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment." *Id.* at 91, 92 (citing *Heller*, 554 U.S. at 625, 635). Marzzarella argued that because he possessed the unlawful weapon in his home, the challenged statute regulated protected conduct. However, we found that "it cannot be the case that possession of a firearm in the home for self-defense is a protected form of possession under all circumstances." *Id.* at 94. If this were the case, "[p]ossession of machine guns or short-barreled shotguns—or any other dangerous and unusual weapon—so long as they were kept in the home, would then fall within the Second Amendment. But the Supreme Court has made clear that the Second Amendment does not protect those types of weapons." *Id.* (citing *Miller*, 307 U.S. at 178; *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), *cert. denied*, 555 U.S. 1174 (2009)).

In case *Marzzarella* left any doubt, we repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes. *See, e.g.*, *Haynes v. United States*, 390 U.S. 85, 87 (1968) (describing machine guns as "weapons used principally by persons engaged in unlawful activities"); *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (noting "machine guns . . . are primarily weapons of war and have no appropriate sporting use or use for personal protection") (quoting S. Rep No. 90-1501, at 28 (1968)); H.R. Rep. No. 99-495, at 4 (1986) (noting that machine guns are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime"); H.R. Rep. No. 90-1956, at 34 (1968) (Conf. Rep.), *as reprinted in* 1968 U.S.C.C.A.N. 4426, 4434 (describing machine guns as "gangster-type weapons"). They are also exceedingly dangerous weapons. *See, e.g.*, *United States v. O'Brien*, 560 U.S. 218, 230 (2010) (noting "[t]he immense danger posed by machineguns"); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 996 (2013) ("A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.") (internal citation omitted); *United States v. Kirk*, 105 F.3d 997, 1001 (5th Cir. 1997) (en banc) (per curiam) (Higginbotham, J., concurring) ("Machine guns possess a firepower that outstrips any other kind of gun."). As such, *Heller* dictates that they fall outside the protection of the Second Amendment.

Our sister circuits have consistently come to similar conclusions. In *Fincher*, the Eighth Circuit found that "[m]achine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the

category of dangerous and unusual weapons that the government can prohibit for individual use." 538 F.3d at 874. We previously quoted this very sentence in our opinion in *Marzzarella*. In *Henry*, the Ninth Circuit ruled that "machine guns are highly 'dangerous and unusual weapons' that are not 'typically possessed by law-abiding citizens for lawful purposes.'" 688 F.3d at 640. And in *Heller v. District of Columbia* ("*Heller II*"), the D.C. Circuit noted that "*Heller* suggests that 'M-16 rifles and the like' may be banned because they are 'dangerous and unusual.'" 670 F.3d 1244, 1263 (D.C. Cir. 2011); *cf. Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009), *cert. denied*, 559 U.S. 1115 (2010) (the Second Amendment does not protect the possession of unregistered machine guns); *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 408 (7th Cir.), *cert. denied sub nom. Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447 (2015) (upholding a ban on semi-automatic assault weapons against a Second Amendment challenge).

Watson nonetheless argues that the District Court misapplied *Heller*'s "dangerous and unusual" language because the doctrine does not pertain to "the mere *possession* of a firearm," but only applies to "the *manner* in which that right is exercised." Appellant's Br. 18. As the above discussion suggests, Watson's unconventional reading contradicts the interpretation adopted by all of the federal circuits that have considered this language. *See, e.g.*, *Friedman*, 784 F.3d at 409; *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015); *Henry*, 688 F.3d 637; *Heller II*, 670 F.3d 1244; *Marzzarella*, 614 F.3d 85; *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010); *Fincher*, 538 F.3d 868. Watson himself concedes that "a majority of courts" interpret the "dangerous and unusual" language in *Heller* to describe possession of a weapon, Appellant's Reply Br. 12, but in fact no case was found adopting the alternative analysis proposed by Watson.

This is likely because *Heller* plainly states that mere possession of certain weapons may be prohibited. *See, e.g.*, *Heller*, 554 U.S. at 626 (noting that the Second Amendment is "not a right to *keep* and carry any weapon whatsoever") (emphasis added); *id.* at 627 (suggesting that the possession of "M-16 rifles and the like" may be banned); *id.* at 624 (same); *see also Miller*, 307 U.S. at 178 (holding that short-barreled shotguns are unprotected under the Second Amendment). And looking at the "dangerous and unusual" phrase in context, the most logical reading is that "dangerous and unusual" describes certain categories of weapons, and not the manner in which the weapons are used. The Court discusses "dangerous and unusual" weapons immediately after discussing what "sorts of weapons" *Miller* protects, and just before the Court discusses why certain types of weapons, even those "that are most useful in military service—M-16 rifles and the like—" may be banned. *See Heller*, 554 U.S. at 627. We therefore decline to adopt Watson's interpretation of *Heller*'s "dangerous and unusual" language.

Similarly, Watson's arguments against categorical bans on certain firearms fail to persuade. *Heller* limits its holding to bans on "handguns held and used for self-defense in the home." *Heller*, 554 U.S. at 636. *Heller* gives special consideration to the District of Columbia's categorical ban on handguns because they "are the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 629. This does not mean that a categorical ban on any particular type of bearable arm is unconstitutional. As explained above, *Heller* contains clear statements to the contrary.

Nor does our opinion in *Marzzarella* support Watson's argument, as he suggests. When *Marzzarella* discusses categorical decisions, the opinion objects to the idea of categorically *protecting* certain weapons, not categorically

*banning* them. *See Marzzarella*, 614 F.3d at 94 ("[I]t also would make little sense to categorically protect a class of weapons bearing a certain characteristic wholly unrelated to their utility."). In fact, *Marzzarella* specifically recognizes that there are particular categories of weapons that fall outside the protection of the Second Amendment. *See, e.g.*, *id.* at 90-91 (noting that "the right to bear arms, as codified in the Second Amendment, affords no protection to weapons not typically possessed by law-abiding citizens for lawful purposes"); *id.* at 92 (noting that "the Second Amendment affords no protection for the possession of dangerous and unusual weapons"). When discussing machine guns and short-barreled shotguns, the opinion states that "the Supreme Court made clear the Second Amendment does not protect those types of weapons." *Id.* at 94-95. Nothing in *Heller* or *Marzzarella* supports Watson's argument.

Because we find that under *Heller* and *Marzzarella* the possession of a machine gun is not protected under the Second Amendment, our inquiry is at an end. These cases make clear that § 922(o) does not burden conduct falling within the scope of the Second Amendment, and thus, Watson's facial challenge to § 922(o) must fail.

## IV. CONCLUSION

Since the Supreme Court's opinion in *Heller*, courts nationwide have debated the parameters of that decision, and the extent to which government regulation may be reconciled with the Second Amendment. However, on at least one issue the courts are in agreement: governments may restrict the possession of machine guns. This finding follows from prior caselaw and the plain language provided by the Supreme Court. We decline to depart from this standard today. Further, we decline to reinterpret the Gun Control Act to allow an individual to circumvent the law through the use of a

trust.  For these reasons, the District Court's opinion will be affirmed.