15-2859

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,

v.

ONE (1) PALMETTO STATE ARMORY PA-15 MACHINEGUN
RECEIVER/FRAME UNKNOWN CALIBER, SERIAL NUMBER
LW001804; WATSON FAMILY GUN TRUST, Claimant,
(D.C. No. 15-cv-02202)

and

RYAN S. WATSON, Individually and as Trustee of the Watson Family Gun Trust,
Plaintiff-Appellant,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA; DIRECTOR
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,
Appellee.
(D.C. No. 14-cv-06569)

Appeal from the United States District Court for the Eastern District of Pennsylvania
D. Ct. Civil No. 2:15-cv-02202 (consolidated with 2:14-cv-06569) (Dalzell, J.)

## APPELLANT'S PETITION FOR REHEARING EN BANC

Stephen D. Stambouliel  
Stambouliel Law, PLLC  
P.O. Box 4008  
Madison, MS 39130  
(601) 852-3440  

Alan Alexander Beck  
Law Office of Alan Beck  
4780 Governor Drive  
San Diego, CA 92122  
(619) 905-9105  

June 10, 2016

# **TABLE OF CONTENTS**

**Pages(s)**

Table of Authorities……………………………………………………………………iii

Statement of the Case………………………………………………………….…....1

Argument

    I.     The Decision Conflicts with the Holdings of *Heller* and *Miller*……..……....3

    II.    Dangerous and Unusual is a Conjunctive Test……………………..…….8

    III.   *Marzzarella* Does Not Control the Outcome………………………..……9

    IV.   The Decision Discards the Benefits of Using a Trust to Evade the

           Rigid Strictures of the Law……………………………………………..10

    V.    Watson Distinguished Himself in this As-Applied Challenge………..……..12

Conclusion………………………………………………………………..…………..12

Required Certifications…...………………………………………….……………...…13

Certificate of Service……………………………………………...…………….…….14

ii

# TABLE OF AUTHORITIES

**CASES**

*Aymette v. State*, 21 Tenn. 154 (1840) ................................................................................ 8

*Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016)……………………………….1, 8, 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................................... *passim*

*Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012) ................................................................ 1,11

*Silveira v. Lockyer*, 328 F.3d 567 (9th Cir. 2003) (Kleinfeld, J.) (Dissenting) .................... 5

*U.S. v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ................................................................ 9, 10

*U.S. v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 14-CV-06569, 2016 WL 2893670, at \*3 (3d Cir. May 18, 2016) ........................................................................................................... 2, 8, 10, 11

*United States v. Miller*, 307 U.S. 174 (1939) ...................................................................... *passim*

**STATUTES**

18 U.S.C. § 922(o) ............................................................................................... 1, 2, 3, 11

26 U.S.C. § 5801 .................................................................................................................. 2

## APPELLANT'S PETITION FOR REHEARING EN BANC

We express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the Supreme Court of the United States and the United States Court of Appeals for the Third Circuit, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court. Specifically, the panel's decision is contrary to the holdings of this Court in *Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012), and the holdings of the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016), and *United States v. Miller*, 307 U.S. 174 (1939). This appeal also involves a question of exceptional importance, the scope of Second Amendment rights, particularly whether the Second Amendment extends, prima facie, to machineguns.

## STATEMENT OF THE CASE

18 U.S.C. § 922(o) generally bans the transfer or possession of a machinegun manufactured after May 19, 1986. The statute provides:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to—
> > (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
> > (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

1

This provision was enacted in 1986 as § 102(9) of the Firearm Owners' Protection Act, which amended the Gun Control Act of 1968. Machineguns are additionally regulated through the National Firearms Act ("NFA"), codified at 26 U.S.C. § 5801 et seq. The NFA imposes a $200 tax on machineguns, suppressors, short-barreled rifles, short-barreled shotguns and destructive devices. Despite the ban on post-May 19, 1986 machineguns and the tax upon them, there are thousands of machineguns lawfully possessed by private individuals. But for the ban, there would likely be hundreds of thousands more lawfully possessed machineguns by private individuals.

Appellant, Ryan S. Watson, Individually and as Trustee of the Watson Family Gun Trust ("Watson") challenged the constitutionality of 18 U.S.C. § 922(o), both facially and as applied, under the Second Amendment. Additionally, Watson alleged that, as a trustee of the trust, he was not prohibited as the definition of "person" under the Gun Control Act did not preclude his trust from manufacturing a machinegun.

The panel refused the "person" interpretation and stated, "We refuse to conclude that with one hand Congress intended to enact a statutory rule that would restrict the transfer or possession of certain firearms, but with the other hand it created an exception that would destroy that very rule." U.S. *v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 14-CV-06569, 2016 WL 2893670, at *3 (3d Cir. May 18, 2016) (attached). The panel additionally upheld the constitutionality of the ban and stated that the "… Second Amendment does not

2

protect the possession of machine guns. They are not in common use for lawful purposes." *Id.* at *5.

The panel's holding that Watson is "… prohibited from performing any of the acts forbidden of natural persons under the Gun Control Act[]" and "[h]is inability to comply with the Gun Control Act, in turn, prevents ATF from granting his application under the National Firearms Act[]" is contrary to 922(o)(2)(A), as Watson *first* received approval from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") *before* the machinegun was manufactured pursuant to that approval (and thus, authority). The panel does not address the exception. The panel treated Watson's as-applied challenge as a facial challenge because it found that "… Watson offers no facts to distinguish why the challenged laws should not apply to him." *Id.* at *4.

## ARGUMENT

### I. THE DECISION CONFLICTS WITH THE HOLDINGS OF *HELLER* AND *MILLER*

The panel relied on *Heller* for the proposition that *Heller*

> …discusses machine guns on several occasions, and each time suggests that these weapons may be banned without burdening Second Amendment rights. *See Heller*, 554 U.S. at 627–28 ("It may be objected that if weapons that are most useful in military service—M–16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause.... But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right."); id. at 624 (suggesting that it would be a "startling" reading of Miller that restrictions on machine guns are unconstitutional).

3

*Id.* at *4. However, when read in context, the "startling" language, refers to the National Firearms Act's taxation on machineguns and *not* the Gun Control Act's ban on post-May 19, 1986 machineguns. For context, the full quote is as follows:

> Read in isolation, *Miller*'s phrase "part of ordinary military equipment" could mean that only those weapons useful in warfare are protected. That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939.

*D.C. v. Heller*, 554 U.S. 570, 624 (2008). This statement should not be read for more than what it states. But in order to understand the reference, it is important to look at *United States v. Miller*, 307 U.S. 174 (1939) which held that:

> …in **the absence of any evidence** tending to show that a possession or use of 'a shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or the efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within the judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. (emphasis added).

*Id. Miller* did not "hold" that a short barrel shotgun was not protected by the Second Amendment, only that the Court had no evidence before it to determine whether or not a short barreled shotgun was related to the preservation or the efficiency of the militia.[1] The *Heller* Court, while not limiting the scope of *Miller*, stated that "*Miller* stands

---

[1] "… *Miller* qualified even the rejection of sawed-off shotguns, by limiting the holding to a case where there was no evidence, and judicial notice could not be taken, of any 'reasonable relationship' of sawed-

4

only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *D.C. v. Heller*, 554 U.S. 570, 623 (2008). As stated in *Heller*:

> We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those "in common use at the time." 307 U.S., at 179, 59 S.Ct. 816. We think that limitation is *fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."* (emphasis added).

*Heller*, 554 U.S. at 627.

*Heller*'s discussion of arms "in common use" does not order the lower courts to engage in a numerical count of a particular weapon in order to determine whether or not it is protected by the Second Amendment. This is an invitation by the Court to review its earlier decision in *Miller* alongside *Heller* in order to determine whether an arm is protected by the Second Amendment. In *Miller* the Court ruled only arms that aid in the preservation or the efficiency of the militia are protected. Based on *Heller,* we know that aiding with personal self-defense fulfills that test and grants Second Amendment protection. *Miller* established that an arm being part of the ordinary soldier's equipment is another way to fulfill that test.

The fact that weapons which fulfill this test are protected is fairly supported by the tradition of prohibiting carrying dangerous and unusual weapons. The antecedent of

---

off shotguns to militia use." *Silveira v. Lockyer*, 328 F.3d 567, 587 (9th Cir. 2003) (Kleinfeld, J.) (Dissenting).

5

this argument holds true as well. There are weapons that are outside of the militia right. Weapons such as surface to air missiles are neither part of the ordinary soldier's equipment nor useful for personal self-defense. Therefore, they are not weapons in common use. Hence, not only is it lawful to ban their ownership, but their carry is not implicated via the dangerous and unusual doctrine. Rather their carry can be banned without a government interest shown. This is because these arms are presumably outside the scope of the Second Amendment. Accordingly, *Heller*'s common use language is an order by the Court to refer to its previous decision in *Miller* and to history in order to determine the scope of the Second Amendment.

Weapons in common use are protected which is supported by the tradition of prohibiting carrying dangerous and unusual weapons. This tradition only refers to the regulations on the carrying of protected arms and armor. At Common Law, subjects had a general right to carry protected arms as these arms were protected by our Common Law right to defense. If an arm was protected, English and early American governments could not strip the right to carry it without cause. Rather to strip one of their rights, the government had to establish conduct with a dangerous weapon was unusual. For example, walking down to the market in full plate with a head axe could be prohibited because this conduct disturbed the peace or "terrified" normal citizens.

A modern day comparison would be if one carried a rifle dressed in SWAT gear or military fatigues through a residential area. This conduct would certainly be unusual because this behavior would be unusual and it would likely disturb the peace or "terrify.

However, if these arms are determined to be protected under the Second Amendment, the burden, per *Heller*, now shifts to the government to prove that they have an interest in regulating said activity. Shifting the burden to the government fairly supports the premise that certain arms are protected. With arms that were not protected, the government can restrict carry without any interest shown. The tradition of prohibiting dangerous and unusual *carry* of arms in common use supports the fact one had a historical right to *own* protected arms at Common Law. The carry of unprotected arms can be banned with no government interest shown because these arms receive no Second Amendment protection. Thus, there was no need to apply the dangerous and unusual doctrine. The tradition of prohibiting the carry of dangerous and unusual weapons supports that weapons in common use are protected. And a faithful reading of *Heller* supports that the weapons in common use are those that survive the *Miller* test.

If, however, as the panel held, machineguns are not protected by the Second Amendment, then Justice Scalia's comments in 2012 about the scope of the Second Amendment make little sense: "I mean, obviously, the (2nd) amendment does not apply to arms that cannot be hand-carried. It's to 'keep and bear.' So, it doesn't apply to cannons. But I suppose there are hand-held rocket launchers that can bring down airplanes that will have to be -- it will have to be decided."[2]  There would simply be no

---

[2] http://cnsnews.com/news/article/justice-scalia-2nd-amendment-limitations-it-will-have-be-decided (last visited 6/3/2016).

7

need to question whether the Second Amendment protects a hand-held rocket launcher as under the panel's interpretation of *Heller*, it is a foregone conclusion that it is not protected.

However, it is clear that machineguns are protected under the Second Amendment. A machinegun is the modern musket. A proper historical analysis demonstrates that a machinegun is protected under the Second Amendment. See *Aymette v. State*, 21 Tenn. 154, 158 (1840) (limiting "arms" to mean those "such as are usually employed in civilized warfare, and that constitute the ordinary military equipment"). This definition of arms was expanded, not limited, by *Heller*.

## II. DANGEROUS AND UNUSUAL IS A CONJUNCTIVE TEST

Simply put, a weapon may not be banned unless it is both dangerous and unusual. "As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J., Concurring) (italics in original). The panel did not take into account *Caetano*, but instead stated that machineguns "are not in common use for lawful purposes." *Palmetto State Armory*, at *5. The facts in *Caetano* demonstrated "approximately 200,000 civilians owned stun guns as of 2009." *Caetano,* at 1032. Therefore, the concurrence stated, "[w]hile less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country." *Id.* The number of privately owned stun guns is about equal to the number of machineguns possessed by law-abiding citizens for lawful purposes. This statistic is

shocking since newly manufactured machineguns have been banned from private ownership since May 19, 1986. The panel's opinion regarding machineguns being unusual when the Supreme Court recently stated that a relatively equal number of stun guns are not unusual is illogical. *Caetano* ultimately forecloses the government's circular argument that machineguns are unusual and therefore they can be banned, even though they were effectively banned since May 19, 1986. But for the ban, the number of civilians that legally owned machineguns would far surpass the number of those who legally own stun guns. Therefore, machineguns are not unusual and cannot be banned

### III. *MARZZARELLA* DOES NOT CONTROL THE OUTCOME

In *U.S. v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010), this Court stated:

> … the Supreme Court has made clear the Second Amendment does not protect those types of weapons [machine guns or short-barreled shotguns]. *See Miller*, 307 U.S. at 178, 59 S.Ct. 816 (holding that short-barreled shotguns are unprotected); *see also United States v. Fincher*, 538 F.3d 868, 874 (8th Cir.2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use."), *cert. denied*, 129 S.Ct. 1369 (2009).

The comments regarding machineguns in *Marzzarella* are, respectfully, dicta and unnecessary to the holding regarding firearms with obliterated serial numbers. Further, *Marzzarella*'s statement that *Miller* held short-barreled shotguns not protected by the Second Amendment is a misreading of *Miller*. As explained above, the Court in *Miller* held that it did not have specific evidence that a short-barreled shotgun was either related to the preservation or the efficiency of the militia, not that a short-barreled

9

shotgun was not protected under the Second Amendment. It is not a distinction without a difference as lack of evidence is not the same as proclaiming something a truism.

The panel in this case cited to *Marzzarella* for the proposition that "'[a]t its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home,'" distilling *Heller*'s holding into protection for "non-dangerous weapons for self-defense in the home." *Palmetto State Armory*, at *5

But, in contrast and as stated in *Heller*, "… the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller* at 582. The Second Amendment does not only protect "those arms in existence in the 18th century." *Id.* "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Id.* at 634. As such, the Second Amendment extends, prima facie, to a bearable machinegun, the exact type of which is at issue in this case.

## IV. THE DECISION DISCARDS THE BENEFITS OF TRUSTS FOR EVADING THE RIGID STRICTURES OF THE LAW

The panel's decision regarding the use of a trust as an exception to the prohibition on "persons" possessing post-May 19, 1986 machineguns treats an enumerated right, the Second Amendment, as something less than a congressionally

10

created benefit: Medicaid. The panel stated: "[i]nterpreting the statute so as to include this exception would thereby swallow the rule. We refuse to conclude that with one hand Congress intended to enact a statutory rule that would restrict the transfer or possession of certain firearms, but with the other hand it created an exception that would destroy that very rule." *Palmetto State Armory*, at *3.

This Circuit has heretofore discussed trusts as vessels to hold things. "A trust is a legal instrument in which assets are held in the name of the trust and managed by a trustee for the benefit of a beneficiary." *Lewis v. Alexander*, 685 F.3d 325, 332 (3d Cir. 2012) (citing Black's Law Dictionary 1546 (8th ed. 2004)). "This structure means that the beneficiary does not actually own the assets of the trust, but instead has an equitable right to derive benefits from them… *The trust has long been a tool for evading the rigid strictures of the law, which has generally been a positive development.* For example, in feudal England—the trust's birthplace—the trust allowed younger sons and daughters to inherit land despite strict rules at law against devising land by will." *Id* at 332 (emphasis added).

This is precisely the case here. The Appellant was given permission, under the authority of the BATFE, to manufacture the machinegun. The trust, as explained by this Court in *Alexander*, is used to evade the "rigid strictures of the law" and instead of "swallowing the rule" as suggested by the panel, § 922(o) reads perfectly in line with the exception for trusts. A trust is not a "person" and therefore not prohibited under the law from possessing the machinegun at issue.

11

## V. WATSON DISTINGUISHED HIMSELF IN THIS AS-APPLIED CHALLENGE

The panel's decision is at odds with the facts of the case with regard to Watson's as-applied challenge. Watson included in his complaint facts that distinguish himself from the vast majority of firearms cases; the fact that he is not a prohibited person, he "… desires to own machineguns for all lawful purposes including in defense of hearth and home [and] … is a member of the bar of two states, a practicing attorney and does not pose any threat to public safety." A82. Additionally, Watson "… passed substantial background checks and character and fitness evaluations from each respective licensing authority for his license to practice law…" A83. These are not trivial facts but instead serve as distinguishing characteristics in firearms cases as Watson is not a criminal or a person prohibited from owning firearms. The Appellees have not alleged that he would be a public safety risk if he had a machinegun, and if that were the case the government would need more than mere accusations to justify its position.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the case be reheard en banc.

Dated: June 10, 2016.

Respectfully Submitted,

/s/ Alan Beck  
Alan Alexander Beck  
Counsel for Appellant

/s/ Stephen D. Stamboulieh  
Stephen Dean Stamboulieh  
Counsel for Appellant

# REQUIRED CERTIFICATIONS

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 35(b)(2) as it is 12 pages long.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify to the following:

The text of the electronic brief will be identical to the text in the paper copies if requested.

A copy of the Judgment and Opinion is attached hereto.

The electronic brief has been scanned for viruses by Kaspersky Internet Security, version 16.0.1.445(c) and found to be virus free.

/s/ Stephen D. Stamboulieh
Stephen Dean Stamboulieh
Counsel for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2016, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Stephen D. Stamboulieh
Stephen Dean Stamboulieh
Counsel for Appellant